454 So.2d 580 (1984)
ROLLINS, INC., et al., Appellants,
v.
Daniel Neal HELLER and Diane Heller, His Wife, Appellees.
Nos. 82-2687, 83-106.
District Court of Appeal of Florida, Third District.
June 26, 1984.
Rehearing Denied September 17, 1984.
*582 Capp, Reinstein, Kopelowitz & Atlas and Jan D. Atlas, Palm Beach, and Addison & Paris, Tampa, for appellants.
Daniel Neal Heller, Sams, Gerstein & Ward, Miami, for appellees.
Before BARKDULL, NESBITT and FERGUSON, JJ.
NESBITT, Judge.
Rollins appeals a final judgment finding it liable for gross negligence and deceptive and unfair trade practices in connection with the installation and servicing of a burglar alarm system and granting an award of compensatory and punitive damages totalling $228,487. We reverse as to the award of damages.
The Hellers entered a contract with Rollins Protective Services Company (RPS) to install and maintain a burglar alarm system in their home. RPS is a subsidiary corporation of Rollins, Inc., the defendant below. The Hellers believed themselves to be dealing with Rollins, Inc. and were unaware of the separate corporate identities. The system was installed and then allegedly "serviced" regularly for more than two years, up until the time the Hellers' residence was burglarized. The alarm system did not work at the time of the burglary and property belonging to the Hellers, valued in excess of one million dollars, was stolen. Subsequently, through investigation and paying of ransom monies, about ninety per cent (in dollar value) of the stolen property was recovered.
The Hellers commenced an action claiming negligence, breach of express and implied warranties, fraud and deceit, misleading advertising, gross negligence and deceptive and unfair trade practices on the part of Rollins. The Hellers voluntarily abandoned their claims based upon ordinary negligence and warranties. The trial court found that the Hellers failed to establish their claims based upon fraud and deceit and misleading advertising. The Hellers have not challenged these findings. The court, however, found Rollins liable for gross negligence and deceptive and unfair trade practices under section 501.201 et. seq., Florida Statutes (1981). The court awarded $128,487 in compensatory damages (based upon the value of the unrecovered stolen items) and $100,000 in punitive damages. Rollins thereupon instituted this appeal challenging its liability as found by the trial court and the damages awarded.
Rollins first contends that the Hellers have failed to pierce the corporate veil and that RPS is the only proper defendant. We find, however, that the record supports the trial court's implicit finding that Rollins was itself a direct participant in the dealings with the Hellers. Therefore, there is no need for the Hellers to pierce the corporate veil between RPS and Rollins.

*583 GROSS NEGLIGENCE[1]
The crucial issue concerning Rollins' liability for gross negligence is whether the limitation of damages provision in the contract is applicable. In pertinent part, the contract states:
It is further agreed that Rollins is not an insurer of the Customer's property and that all charges and fees herein provided for are based solely on the cost of installation, service of the System and scope of liability hereinafter set forth and are unrelated to the value of the Customer's property or the property of others located on the Customer's premises.
The parties agree that if loss or damage should result from the failure of performance or operation or from defective performance or operation or from improper installation or servicing of the System, that Rollins' liability, if any, for the loss or damage thus sustained shall be limited to a sum equal to ten (10%) per cent of one year's service charge or $250.00, whichever sum is the greater, and that the provisions of this paragraph shall apply if loss or damage, irrespective of cause or origin, results, directly or indirectly to persons or property from performance or nonperformance of obligations imposed by this Agreement or from negligence, active or otherwise, of Rollins, its agents or employees.
It is well settled that exculpatory and limitation of damages provisions are valid and enforceable in these types of contracts. Mankap Enterprises, Inc. v. Wells Fargo Alarm Services, 427 So.2d 332 (Fla. 3d DCA 1983); Continental Video Corp. v. Honeywell, Inc., 422 So.2d 35 (Fla. 3d DCA 1982); Ace Formal Wear, Inc. v. Baker Protective Service, Inc., 416 So.2d 8 (Fla. 3d DCA 1982); L. Luria & Sons, Inc. v. Alarmtec International Corp., 384 So.2d 947 (Fla. 4th DCA 1980).
In Mankap, this court held that such provisions will not limit one's liability for fraud, an intentional tort. 427 So.2d at 333-34. The trial court in the present case, however, specifically found that the Hellers failed to establish fraud and deceit on the part of Rollins. Instead, the court found the provisions did not apply because Rollins was guilty of gross negligence amounting to a willful, wanton and reckless indifference to the rights of the Hellers. Without unnecessarily lengthening this opinion, we simply hold that the record supports the finding of gross negligence. See Maddalena v. Southern Bell Telephone & Telegraph Co., 382 So.2d 1246 (Fla. 4th DCA 1980) (compounding effect of successive acts can amount to gross negligence). This, however, does not put the case within Mankap's fraud exception to the application of the provisions.
In L. Luria, the plaintiffs sought compensatory damages for breach of contract and warranties and for negligence, and also sought punitive damages for "gross, wanton and willful negligence" on the part of a burglar alarm company. The contract between the parties stated that the company was not liable for any loss or damage resulting from their services under the contract. The contract also contained a limitation of damages provision.[2] The court *584 found that the exculpatory clause totally excluded liability on the company's part for losses due to burglary and affirmed the trial court's dismissal of the action. The court further found that the limitation of damages provision was enforceable and in a proper case would limit damages according to its terms. 384 So.2d at 947-48. Accord Mankap; Continental Video; Ace Formal Wear.
Although the contract in the present case does not contain an exculpatory clause which would immunize Rollins from all liability, it does contain a limitation of damages provision. On the authority of the above cases, therefore, any damages awarded pursuant to Rollins' gross negligence should have been limited according to the contract, and it was error for the trial court to find the provision did not apply in the face of gross negligence.[3] Accordingly, the aggregate of compensatory and punitive damages recoverable by the Hellers for Rollins' gross negligence is limited to ten per cent of one year's service charge or $250, whichever is greater.

THE FDUTPA VIOLATION
We now turn to the trial court's finding that Rollins violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). § 501.201 et. seq., Fla. Stat. (1981). The applicable provision makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1). Although the trial court found no fraud on Rollins' part, such a finding is not necessary to sustain a violation under the FDUTPA. The legislature specifically provided that great weight was to be given to the federal courts' interpretations of the Federal Trade Commission Act. § 501.204(2). In D.D.D. Corp. v. Federal Trade Commission, 125 F.2d 679, 682 (7th Cir.1942), the court held "that the false, unfair or deceptive acts defined in the Federal Trade Commission Act need not be such as would constitute fraud." Reviewing the record, we find that there was competent substantial evidence presented to support the court's finding that Rollins violated the FDUTPA. See Deltona Corp. v. Jannotti, 392 So.2d 976 (Fla. 1st DCA 1981).
Having upheld the trial court's finding on the FDUTPA violation, we now must determine what damages are allowed by the Act. The Act specifically provides that an "individual may recover actual damages, plus attorney's fees and court costs." § 501.211(2). The Act, however only allows recovery of damages related to the property which was the subject of the consumer transaction. § 501.212(3). We find that the subject of the consumer transaction in the present case was the installation of the burglar alarm system and the services performed thereon, rather than the items stolen from the Hellers' house. A company which installs and services burglar *585 alarms does not assume the responsibility of insuring all the items intended to be protected by the system.[4]Central Alarm of Tucson v. Ganem, 116 Ariz. 74, 567 P.2d 1203 (Ct.App. 1977). This immunity was made clear in the present case by the provision in the contract stating that "Rollins is not an insurer of the Customer's property." Therefore, the damages awarded pursuant to the violation of the FDUTPA must be limited to the actual damages related to the system and services Rollins contracted to provide.
While the FDUTPA does not define "actual damages," courts of other jurisdictions have had occasion to define the term within similar statutes. In interpreting Texas' Deceptive Trade Practices Act, Tex.Bus. & Com. Code Ann. § 17.41, et. seq. (Vernon 1979), the Texas supreme court held that actual damages are those damages recoverable at common law. Brown v. American Transfer and Storage Co., 601 S.W.2d 931 (Tex.), cert. denied, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980). See also Lubbock Mortgage & Investment Co. v. Thomas, 626 S.W.2d 611 (Tex. App. 1981); United Postage Corp. v. Kammeyer, 581 S.W.2d 716 (Tex. App. 1979). In determining the measure of actual damages, the court in Raye v. Fred Oakley Motors, Inc., 646 S.W.2d 288, 290 (Tex. App. 1983), held:
Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [citations omitted] A notable exception to the rule may exist when the product is rendered valueless as a result of the defect  then the purchase price is the appropriate measure of actual damages. [citation omitted]
We hold that Florida's statutes should be interpreted, and actual damages measured, in a similar manner. Therefore, the actual damages awardable to the Hellers pursuant to the FDUTPA violation should be measured in accordance with the formula set out in Raye.
The recovery of actual damages pursuant to this violation, however, is not limited by the limitation of damages provision in the contract. The provision, literally read, does not attempt to cover this situation. See L. Luria (intention must be made clearly and unequivocally to uphold an exculpatory provision). Further, any attempt to limit one's liability for deceptive or unfair trade practices would be contrary to public policy. Cf. John's Pass Seafood Co. v. Weber, 369 So.2d 616 (Fla. 2d DCA 1979) (it would be contrary to public policy to enforce an exculpatory clause that attempts to immunize one from liability for breach of a positive statutory duty); Mankap (exculpatory clauses relating to fraud or intentional misrepresentation are contrary to public policy and unenforceable). Therefore, actual damages are recoverable in full for the FDUTPA violation notwithstanding Rollins' attempt to limit its liability in the contract.
We now must determine whether an award of punitive damages is allowable pursuant to an FDUTPA violation. The Act specifically provides for the recovery of actual damages, but makes no provision for punitive damages. See § 501.211. See also 2 Words and Phrases 363 (1955) (actual damages generally considered synonymous with compensatory damages, in contradistinction to punitive damages). A claim for punitive damages is outside the scope of chapter 501 and the FDUTPA. *586 See LaFerney v. Scott Smith Oldsmobile, Inc., 410 So.2d 534 (Fla. 5th DCA 1982). Accordingly, any award of punitive damages based upon a violation of FDUTPA would be improper absent some independent basis such as fraud. See Bert Smith Oldsmobile, Inc. v. Franklin, 400 So.2d 1235 (Fla. 2d DCA 1981); Hauser Motor Co. v. Byrd, 377 So.2d 773 (Fla. 4th DCA 1979). In the present case, the trial court specifically found in favor of Rollins on the Hellers' claim of fraud. Since no basis existed in the present case upon which punitive damages could be assessed beyond the amount stated in the limitation of damages provision, it was error for the trial court to award $100,000 in punitive damages.

CONCLUSION
In sum, we hold that the record supports the trial court's findings that Rollins is liable for its gross negligence and for violating the FDUTPA. We find, however, that the damages awarded were improper. Any damage award, including an award of punitive damages, based upon liability for gross negligence is limited by the limitation of damages provision in the contract. Although this provision does not apply to an award of damages pursuant to the FDUTPA violation, any such award must be limited to "actual" damages. The actual damages in the present case should be computed based upon the alarm system and the services Rollins agreed to provide, and not with regard to the value of the items stolen during the burglary. The trial court, of course, will ensure that the Hellers do not recover twice for the same element of damages. See Hillsborough County Aviation Authority v. Cone Brothers Contracting Co., 285 So.2d 619 (Fla. 2d DCA 1973).
Following our determination of the above issues, we find that the other points raised by Rollins do not merit discussion and that the Hellers' points on cross-appeal are hereby rendered moot. Reversed and remanded for a new trial on damages.
NOTES
[1] The duty breached by Rollins may have sprung from a contractual promise, but "the duty sued on in a negligence action is not the contractual promise but the duty to use reasonable care in affirmatively performing that promise. The duty exists independent of the contract." Navajo Circle, Inc. v. Development Concepts Corp., 373 So.2d 689, 691 (Fla. 2d DCA 1979). See also Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932); Robertson v. Deak Perera (Miami), Inc., 396 So.2d 749 (Fla. 3d DCA 1981); Gallichio v. Corporate Group Service, Inc., 227 So.2d 519 (Fla. 3d DCA 1969).
[2] The limitation of damages provision involved in L. Luria was somewhat similar to the one in the present case. It stated:

If there shall, notwithstanding the above [exculpatory] provisions, at any time be or arise any liability on the part of Company by virtue of this Agreement or because of the relation hereby established, whether due to the negligence of Company or otherwise, such liability is and shall be limited to a sum equal to the rental service charge hereunder for a period of service not to exceed six months, which sum shall be paid and received as liquidated damages.
384 So.2d at 948. Although this provision looks similar to a liquidated damages provision, the court adopted the holding in Central Alarm of Tucson v. Ganem, 116 Ariz. 74, 567 P.2d 1203 (Ct.App. 1977), which found these types of provisions were actually limitation of damages provisions. L. Luria, 384 So.2d at 948. See also the limitation of damages provisions in Mankap, Continental Video and Ace Formal Wear which more closely resemble the provision in the present case.
[3] The Hellers' attempt to avoid these provisions by claiming the entire contract is void on the ground that Mrs. Heller did not read it before she signed it and believed it was merely an order form is without merit. Implicit in the trial court's attempt to avoid the exculpatory and limitation of damages provisions is its finding that the contract was valid. We agree. The evidence indicates Mrs. Heller had the ability to understand the contract if she had taken the time to read it. Although Mrs. Heller testified that she did not read the contract nor was it read to her before she signed it, she nevertheless admitted that she was not prevented from reading it. Accordingly, the Hellers are bound by the contract and its provisions despite the fact that Mrs. Heller did not read, and consequently did not know, the terms of the contract she was signing. See Allied Van Lines, Inc. v. Bratton, 351 So.2d 344 (Fla. 1977); All Florida Surety Co. v. Coker, 88 So.2d 508 (Fla. 1956).
[4] Any such holding would in effect convert burglar alarm companies into insurance companies. It is most likely that the majority of persons obtain a burglar alarm system to deter by threat of detection some would-be thieves. Having such a system would probably result in lower insurance premiums, but it should not be used as an alternative to insurance. It is apparent in the present case that the Hellers had underinsured the unrecovered stolen property. There is no sound reason why Rollins should bear the burden of this oversight by the Hellers.