587 So.2d 514 (1991)
MAROONE CHEVROLET, INC., Appellant,
v.
Agneta NORDSTROM, Appellee.
No. 90-1001.
District Court of Appeal of Florida, Fourth District.
September 25, 1991.
*515 A. Edward Quinton, III, of Quinton, Lummus, Dunwody & Jensen, P.A., Miami, for appellant.
Gary B. Goldman of Law Offices of Goldman & Goldman, North Miami Beach, for appellee.
STEVENSON, W. MATTHEW, Associate Judge.
Appellant/defendant, Maroone Chevrolet, Inc., timely appeals a final judgment predicated on a directed verdict and jury findings entered in favor of the appellee/plaintiff, Agneta Nordstrom. For the reasons stated below, we reverse.
This case originates from the sale of an older model Corvette by appellant, Maroone Chevrolet, Inc., to appellee, Agneta Nordstrom. The salient facts may be briefly summarized. Nordstrom, in the course of her business, purchased automobile parts from Maroone Chevrolet. Over a period of time, Nordstrom frequently asked Mark Lancaster, a Maroone Chevrolet employee, whether any older model Corvettes were for sale. Nordstrom had always been informed that no such Corvettes were available on the lot. From this point on, there is some conflicting testimony. Appellee testified that while at Maroone Chevrolet, a man by the name of Robert Crumb told her that he had a friend, Samuel McFarland, who wanted to sell a 1981 Corvette. Nordstrom could not pay cash for the car so Crumb asked Lancaster if Maroone Chevrolet could buy the car and resell it to appellee for the purpose of obtaining financing. Nordstrom testified that she and Crumb then went to inspect and drive the car, at which point she saw the *516 car's West Virginia registration in the glove compartment. Nordstrom stated that she decided to purchase the car and later returned to Maroone Chevrolet to discuss the financing arrangements. Mark Lancaster's recollection differed, and he testified that Nordstrom and Crumb went to Maroone Chevrolet requesting that he assist her in obtaining financing after Nordstrom had already inspected the Corvette and negotiated a price for the car with McFarland.
Nordstrom was advised by Lancaster that in order for Maroone Chevrolet to assist her in obtaining financing it would cost seven hundred dollars ($700.00) over the negotiated price of the car and that Maroone Chevrolet would have to purchase the car from McFarland through a paper transfer and then sell the car to appellee. After financing was obtained for Nordstrom, McFarland brought his West Virginia title to Maroone Chevrolet for a transfer of title to the buyer. The West Virginia title was then sent to the Florida Department of Motor Vehicles and a new Florida title was issued in Nordstrom's name. On July 13, 1987, approximately eight months after appellee purchased the Corvette, the vehicle turned up missing from the parking lot of a movie theater. Nordstrom filed a claim with her insurance company to recover for the loss of the car. The insurer initially denied the claim but thereafter paid it in settlement of a lawsuit brought by Nordstrom against the insurer for the alleged theft.
In November of 1987, after the "disappearance" of the Corvette, Nordstrom notified Maroone that there was a discrepancy between the year of the manufacture of the car and the number of digits in the vehicle identification number (VIN). The VIN on the certificate had thirteen digits, which is the correct number for all 1978 or older model Corvettes, instead of seventeen digits which is the correct number for all 1981 models. In June 1988 appellee filed a lawsuit against Maroone Chevrolet.

PROCEDURAL BACKGROUND
Appellee's second amended complaint alleges that appellant: (1) committed a breach of warranty of title under section 672.312, Florida Statutes (1989); and (2) engaged in an unfair and deceptive trade practice under chapter 501, Florida Statutes (1989). The case was tried before a jury on January 30 and 31, 1990. At the close of all of the evidence, the court granted appellee's motion for directed verdict on the breach of warranty claim, finding that Maroone breached a warranty of title which caused a loss to Agneta Nordstrom. In addition, the jury found that Maroone's actions constituted an unfair and deceptive trade practice which caused a loss to Nordstrom and awarded $13,710.00 in damages. Final Judgment was entered for appellee in this amount on February 12, 1990. Maroone Chevrolet moved for a new trial. In response, the trial court vacated the final judgment, reaffirmed its granting of appellee's motion for directed verdict and granted a new trial to determine: (1) the issue of whether appellee intentionally procured the disappearance of her own vehicle and (2) the possible set-off that Maroone might be entitled to because of the insurance settlement.
The foregoing two issues were retried before a jury on May 21, 1990. The jury found: (1) that appellee intentionally procured the disappearance of her own vehicle and (2) that but for appellee's actions in causing the disappearance, Maroone Chevrolet could have inspected the vehicle identification number on the car itself and then properly titled the Corvette. According to the trial court, these findings entitled seller to a set-off of $9,995.00. Thereafter, on August 21, 1990, the trial court entered final judgment for appellee in the reduced amount of $3,715.00. This appeal follows.
The appellant raises several points on appeal including its two main claims: (1) the trial court erred in directing a verdict at the close of all of the evidence for appellee on the breach of warranty claim, and (2) the evidence failed to establish that appellant committed an unfair or deceptive trade practice. Because we agree with appellant on these two main issues, it is not necessary to discuss several subordinate points raised by appellant.
*517 Count I of appellee's amended complaint, the count on which the trial court directed a verdict for appellee, is based on the warranty of title provision found in Chapter 672 of the Florida Uniform Commercial Code. Section 672.312 provides in part as follows:
Warranty of title and against infringement; buyer's obligation against infringement 
(1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that:
(a) The title conveyed shall be good, and its transfer rightful... .
* * * * * *
(2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.
We believe the trial court erred in denying appellant's request for a jury instruction concerning the issue of whether the warranty of title was excluded by circumstances surrounding the sale. The trial court necessarily disposed of this issue when it directed a verdict for appellee on the breach of warranty claim. There was ample evidence from which the jury could conclude that the circumstances of the sale excluded the warranty of title. The trial court incorrectly concluded that exclusion by circumstances was not an issue because there was no such exclusion in the written agreement between the parties. The statute specifically provides that the warranty may be excluded by specific language or by circumstances. Thus, where there is a writing concerning the sale between the parties which is silent on the issue of exclusion of warranty, the existence of circumstances which would exclude or modify a warranty of title is not precluded. Appellee belatedly responds on appeal to this issue by pointing to the written express warranty of title contained in the application submitted to the DMV. Even if this issue had been timely presented and considered at trial, it is without merit because appellee never saw, never signed, and was never given a copy of the application for certificate of title; rather, it was prepared and sent by Maroone Chevrolet to the Department of Motor Vehicles. Appellee cannot rely on this written warranty against appellant and therefore appellee's argument that such "warranty" cannot be excluded under section 672.312 is erroneous. See Global Truck & Equip. Co. v. Palmer Mach. Works, 628 F. Supp. 641 (N.D.Miss. 1986) (where an affirmation is made subsequent to the making of the contract, the affirmation is not "part of the basis of the bargain" and is therefore not an express warranty under the UCC provisions). We hold that in this case the question of whether circumstances existed which gave appellee a reason to know that appellant was not warranting the validity of the Corvette's title is a question of fact to be decided by the trier of fact.
We have examined appellant's claims that the trial court erred in directing a verdict for appellee on the issue of whether or not appellant conveyed "good title" within the meaning of section 672.312, Florida Statutes (1989), and we find no error either in the instructions given or refused nor in the conclusion reached. The discrepancy in the Corvette's title certificate, the DMV representative's uncontroverted testimony that the certificate of title was subject to cancellation and would have been cancelled but for the pendency of litigation, and the existence of documents which identify another vehicle with the same vehicle identification number as that of the Corvette were sufficient to show, as a matter of law, a substantial cloud over the purchaser's title from which colorable claims and other problems for the purchaser could arise.
The Florida courts have not squarely addressed whether a cloud on a title is sufficient to breach a seller's warranty under section 672.312 or if the purchaser must demonstrate the existence of superior or paramount title in a third party and a subsequent disturbance of quiet possession of the purchased goods. The majority of *518 states which have enacted this provision of the Uniform Commercial Code have concluded that there need not be an actual encumbrance on the purchaser's title or actual disturbance of possession to permit a purchaser to recover for a breach of warranty of title when he demonstrates the existence of a cloud on his title, regardless of whether it eventually develops that a third party's title is superior. American Container Corp. v. Hanley Trucking Corp., 111 N.J. Super. 322, 268 A.2d 313 (Ch.Div. 1970); Jefferson v. Jones, 286 Md. 544, 408 A.2d 1036 (1979); City Car Sales, Inc. v. McAlpin, 380 So.2d 865 (Ala. Civ. App. 1979), cert. denied, 380 So.2d 869 (Ala. 1980); Wright v. Vickaryous, 611 P.2d 20 (Alaska 1980); Ricklefs v. Clemens, 216 Kan. 128, 531 P.2d 94 (1975); John St. Auto Wrecking v. Motors Ins. Corp., 56 Misc.2d 232, 288 N.Y.S.2d 281 (N.Y.Dist.Ct. 1968); Catlin Aviation Co. v. Equilease Corp., 626 P.2d 857 (Okla. 1981); Saenz Motors v. Big H. Auto Auction, Inc., 653 S.W.2d 521 (Tex. Ct. App. 1983), aff'd, 665 S.W.2d 756 (Tex. 1984). Indeed, as the court stated in Frank Arnold Contractors v. Vilsmeier Auction Co., Inc., 806 F.2d 462, 464 (3d Cir.1986), the majority view "is supported by the policy that a purchaser should not be required to engage in a contest over the validity of his ownership." But see C.F. Sales, Inc. v. Amfert, 344 N.W.2d 543 (Iowa 1983), and Skates v. Lippert, 595 S.W.2d 22 (Mo. Ct. App. 1979), for the minority view which requires the purchaser to establish the existence of a superior or paramount title in a third party.
We believe that the majority view is correct and fulfills the remedial purposes of the statute as well as the statute's intention to expand the protections afforded to a purchaser at common law. Therefore, we hold that under the Sales section of the Florida Uniform Commercial Code, a purchaser can recover for breach of warranty of title when he demonstrates the existence of a substantial cloud or shadow on his title, regardless of whether it eventually develops that any third party's title is superior. Whether a substantial cloud or shadow exists in relation to a purchaser's title is a mixed question of law and fact and must be determined on a case-by-case basis. Surely the cloud on the title must be predicated on some objective factor and the baseless anxiety of the hypersensitive purchaser regarding the validity of his title will not result in a breach of warranty. In the instant case, reasonable minds cannot differ and the substantial cloud cast over appellant's title is manifest as a matter of law and fact. In a similar case involving irregularities in the title certificate of an automobile, the court stated:
Whenever the title to personal property is evidenced by a document which is an aid to proving ownership, as is true in the case of motor vehicles ... any substantial defect in that document necessarily creates a reasonable doubt as to that ownership.... In other words, a breach of warranty of title occurs whenever a seller of a motor vehicle fails to provide his purchaser with adequate proof of ownership because of the reasonable doubts which faulty documentation raise as to the validity of the buyer's title.
Jefferson, 286 Md. at 553-54, 408 A.2d at 1042. Of course, the damages caused by a breach of warranty where there is no adverse claim by a third party or other actual disturbance of quiet possession will vary with each case and in some circumstances, as here, those damages will be de minimis.
Finally, the evidence was insufficient as a matter of law to establish that appellant committed an unfair and deceptive trade practice under Chapter 501, Florida Statutes (1989). In view of the lack of evidence supporting a loss to appellee (indeed, appellee concedes that she is entitled to nominal damages only and cannot sustain an award of consequential and/or incidental damages), she cannot recover under the deceptive and unfair trade practices claim. It is significant in this case that the discrepancy in the title did not become known until after the Corvette's disappearance. Appellee suffered absolutely no damages as a result of the alleged breach of warranty. Section 501.211(2), Florida Statutes (1987) (emphasis added), states:

*519 (2) In any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such individual may recover actual damages, plus attorneys fees and court costs as provided in s. 501.2105.
Therefore, it is clear that an actual loss must be shown prior to recovery under chapter 501 and that entitlement to nominal damages alone is not enough. See also Rollins, Inc. v. Heller, 454 So.2d 580 (Fla. 3d DCA 1984), rev. denied, 461 So.2d 114 (Fla. 1985).
Accordingly, we reverse the final judgment below and remand this cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ANSTEAD and WARNER, JJ., concur.