599 So.2d 746 (1992)
STEINBAUER ASSOCIATES, INC., Appellant/Cross-Appellee,
v.
Alan M. SMITH and Smith Commercial Group, Inc., a Florida Corporation, Appellees/Cross-Appellants.
No. 89-1982.
District Court of Appeal of Florida, Third District.
June 2, 1992.
Weintraub & Rosen, P.A., and Michael A. Rosen, Miami, for appellant/cross-appellee.
Barrett & Rogers and William L. Rogers, Miami, for appellees/cross-appellants.
Before NESBITT, FERGUSON and COPE, JJ.
PER CURIAM.
Steinbauer Associates, Inc., appeals from a denial of its motion for a new trial after a jury found that Steinbauer had been defrauded but awarded no damages. We reverse for a new trial on damages.
This lawsuit arose out of the sale of property in Dade County. Taking the evidence *747 in the light favorable to the prevailing party, Steinbauer, the facts are as follows. Appellee Alan M. Smith contacted the Steinbauer firm in June, 1986 because he had seen a Steinbauer sign on some real estate. Smith met with John Steinbauer, Sr. and John Steinbauer, Jr.
The Steinbauers explained that there were two adjacent parcels of real estate. The Steinbauer firm was the exclusive agent for the larger parcel, which it owned and on which the sign was situated. The adjoining parcel  which gives rise to this litigation  was owned by Jules Lipp and others. The Steinbauers indicated that the Steinbauer firm had an open listing on the Lipp property.[1]
Smith stated that he was a real estate broker with E.M. Capital, Inc., and had a prospect in South Africa, a Mr. Henning, who was interested in the smaller lot. In fact, Smith was not a broker and the prospect never materialized.[2] Smith and John Steinbauer, Sr. signed an agreement stating that E.M. Capital and Steinbauer Associates would split a five percent commission that would result from the sale of the property to the South African prospect. Steinbauer explained that Lipp had quoted a net price for the property, and that the five percent commission was to be added to Lipp's net figure in order to arrive at the sale price of the property. Mr. Steinbauer then gave Smith information on the property, including aerial photos, market conditions for the area and rental rates for warehouse property in the area.
Based on the understanding that Smith was a broker acting on behalf of an identified prospect, Steinbauer indicated that Smith could discuss the transaction directly with Lipp, although the Steinbauers indicated that they would prefer to participate in any such discussions.
Two days after the meeting with Smith, Steinbauer wrote to Lipp to advise him that
On July 1, 1986, we submitted your property located at the above referenced address to Mr. Alan Smith of E.M. Capital Inc. with his prospect, Mr. Harold Henning.
We will continue to work with these prospects and endeavor to interest them further. If they return to examine your property again or make any personal or telephone contact with you, we would appreciate your notification of the same.
Thereafter, Smith began meeting with Lipp. Unbeknownst to Steinbauer, Smith began negotiating directly with Lipp for Smith to buy the property. During his negotiations with Lipp, Smith continued to obtain additional information on the property and area from the Steinbauer firm. He also negotiated with Steinbauer regarding the building of a cul-de-sac that would service both pieces of property.
In September, 1986, Smith signed a contract to purchase the property from Lipp. The contract contained a provision that Smith agreed to indemnify Lipp for any claim for a commission on the sale. In December, Smith closed on the property and took title in the name of Smith Commercial Group, Inc., a corporation he formed just prior to the closing.
Steinbauer Associates filed a three count complaint against Smith and the Smith Commercial Group, alleging fraud, tortious interference with a business relationship and quantum meruit for the services it rendered to Smith. Smith defended by contending that Steinbauer did not in reality *748 have an open listing on the Lipp property. He asserted that Steinbauer's representation that it did have an open listing was fraudulent and that because of this fraud, Steinbauer was estopped from claiming any damages.
The jury was instructed on Steinbauer's three causes of action.[3] On the fraud count, the jury was instructed as to Steinbauer's claim as against Smith, and also as to Smith's defense that Steinbauer had itself made misrepresentations. The jury returned an interrogatory verdict and found that Smith defrauded Steinbauer Associates. The amount of damages awarded, however, was zero. Steinbauer moved for a new trial on damages, which was denied, and Steinbauer has appealed.[4]
Steinbauer Associates' motion for a new trial was based on the inadequacy of the damages. The motion argued that Steinbauer had introduced sufficient evidence of the fact, as well as the extent, of its injury. Smith continues to argue that Steinbauer was not injured because it did not have a listing agreement with Lipp for the sale of his property and was not, therefore, entitled to any commission. We reject this argument. The jury's verdict resolved the liability issue in favor of Steinbauer. This must be taken to mean that Steinbauer's testimony was believed and that Steinbauer had an open listing on the property.
A zero damage verdict for the plaintiff, even when coupled with a finding of liability against the defendant, may be tested for inadequacy in light of the evidence by an appropriate motion for new trial. Cowart v. Kendall United Methodist Church, 476 So.2d 289, 291 (Fla. 3d DCA 1985).[5] Actual damages and the measure thereof are essential as a matter of law in establishing a claim of fraud. National Equipment Rental, Inc. v. Little Italy Restaurant & Delicatessen, Inc., 362 So.2d 338, 339 (Fla. 4th DCA 1978). One measure of damages for fraudulent misrepresentation is the pecuniary loss suffered as a result of the recipient's reliance on the misrepresentation. Restatement of Torts (Second) § 549(1)(b).
Where conflicting evidence exists concerning damages and reasonable persons could believe that the plaintiff sustained no damages, a zero verdict will be upheld. Surety Mortgage, Inc. v. Equitable Mortgage Resources, Inc., 534 So.2d 780, 782 (Fla. 2d DCA 1988). That is not the case here. The jury found that Smith came to the Steinbauer firm and misled them in the transaction with respect to the Lipp property. Steinbauer provided services to Smith on the understanding that they were working toward a sale of the property to a prospect of Smith. They also made the commission agreement described earlier, which provided for a five percent commission on the sale.
A fair reading of Smith's testimony is that he was in the business of real estate development. He would locate properties that were suitable for development. Because Smith did not himself have the necessary funds to acquire the properties, he would locate investors to provide the funds for acquisition. In the present case he indicated that he had a South African prospect for the property, but in any event, it is clear that Smith was investigating the property for possible acquisition by a venture in which Smith would himself participate.
*749 If Smith had proceeded with Steinbauer under his true colors from the outset, Steinbauer would have introduced Smith to Lipp as buyer, not broker. Steinbauer would have participated in the negotiation of the transaction with Lipp and would have been entitled to the five percent commission. Smith went directly to Lipp to buy the property for his own account, thus bypassing Steinbauer and buying the property without the payment of any commission.[6] Smith knew that the commission was to be five percent, and knew that the five percent would be added to the net figure that Lipp wanted for the property. On this state of facts, it is plain that the primary measure of damages as against Smith is the five percent commission on the purchase price of the property.[7] As indicated, there is substantial competent evidence in the record with respect to the amount of commission and its loss. Likewise, we can perceive no view of the evidence which would justify an award of zero damages. Steinbauer is entitled to a new trial on damages.
Smith argues that if there is to be a new trial, it should be on liability and damages. Smith claims that the verdict form was not revised after the directed verdict was entered in favor of the Smith Commercial Group and that therefore the form confused the jury. Smith is factually incorrect: the interrogatory verdict form was modified after the directed verdict. As described above in footnote 3, the jury was instructed to consider plaintiff's claims against Alan Smith only on counts 1 and 2 and against both defendants on count 3. The word "defendants" was changed on the interrogatory verdict form to reflect just one defendant for the first two counts. Therefore, we reject this as a basis for a new trial on both liability and damages. Smith has raised no other issue as grounds for a new trial on liability as well as damages.
We conclude that the issues of liability and damages were not so interrelated as to require a new trial on both. See e.g. Cedars of Lebanon Hospital Corp. v. Silva, 476 So.2d 696, 704 (Fla. 3d DCA 1985). While Smith vigorously contested liability at trial, that fact alone is not enough to require a new trial on both liability and damages. See McIntosh v. Flagler Title Co., 483 So.2d 50 (Fla. 4th DCA 1986); Cedars of Lebanon Hospital Corp. v. Silva. Since the jury's verdict was against the manifest weight of the evidence on damages, there must be a new trial on that issue. Continuum Condominium Ass'n, Inc. v. Continuum VI, Inc., 549 So.2d 1125, 1127 (Fla. 3d DCA 1989).
As to Smith's cross-appeal of the cost judgment, we affirm.
Reversed and remanded for a new trial on damages as to Smith; appeal dismissed as to Smith Commercial Group, Inc.; affirmed as to Smith's cross-appeal.
NOTES
[1] An open listing is

the right to solicit and receive offers with respect to the owner's property with the expectation of compensation if successful in finding a purchaser or effecting a sale of the property on terms and conditions specified by or acceptable to the owner. This right is nonexclusive and is shared by all other brokers with whom the owner lists the property.
The Florida Bar, Florida Real Property Sales Transactions § 2.9, at 21 (1978). "The broker's employment usually is to find a purchaser [ready, willing and able to buy] but, if expressly provided in the agreement, it may be to effect a sale." Id. § 2.10, at 22 (emphasis omitted). See generally A. Gaudio, Real Estate Brokerage Law §§ 73-74 (1987).
[2] Smith testified that he met Henning by chance during a visit by Henning to Miami. Henning expressed an interest in investing in real estate. Smith identified Henning to the Steinbauers as the prospective purchaser of the Lipp property. However, Henning had returned to South Africa and Smith was unable to contact him there.
[3] The trial court granted the Smith Commercial Group's motion for directed verdict on counts 1 and 2, the fraud and tortious interference claims, leaving only Smith individually as the defendant on those counts. The jury instructions referred to Alan Smith as the defendant in those counts.
[4] Although Steinbauer's notice of appeal includes Smith Commercial Group, Inc., as an appellee, Steinbauer seeks reversal of the judgment as to Smith only. Steinbauer seeks no relief as to the judgment in favor of Smith Commercial Group, Inc., which was based on a directed verdict in favor of Smith Commercial Group, Inc., on counts 1 and 2, and a jury verdict in Smith Commercial Group's favor on count 3. The appeal is therefore dismissed as to Smith Commercial Group, Inc.
[5] This is distinguished from an inconsistent verdict which must be objected to at the time the verdict is returned so that the jury may have an opportunity to correct the inconsistency. Moorman v. American Safety Equipment, 594 So.2d 795, 799 (Fla. 4th DCA 1992).
[6] Based on the understanding that Smith was a broker acting on behalf of a South American prospect, Steinbauer indicated to Smith that Smith could discuss the property directly with Lipp, although Steinbauer would prefer to be involved. That arrangement would have been perfectly appropriate had Smith in fact been a broker. It was very detrimental to Steinbauer's position because Smith was not in fact a broker. Steinbauer would have insisted that Smith work through Steinbauer if Steinbauer had known the true state of affairs.
[7] Steinbauer had agreed to split the commission with Smith and E.M. Capital, Inc. However, the agreement to divide the commission is not operative because Smith was not a broker and was not entitled to a brokerage commission. E.M. Capital, Inc., never participated in the transaction.