715 So.2d 311 (1998)
FORT LAUDERDALE LINCOLN MERCURY, INC., d/b/a Lauderdale Imports, Ltd./BMW, Appellant,
v.
Jerry CORGNATI, Appellee.
No. 95-4402.
District Court of Appeal of Florida, Fourth District.
July 22, 1998.
Rehearing Denied September 3, 1998.
*312 A. Edward Quinton, III of Adams, Quinton & Fuller, P.A., Miami, for appellant.
Stephen L. Shochet of Stephen L. Shochet, Boca Raton, for appellee.
SHAHOOD, Judge.
This is an appeal from a Final Judgment entered on appellee's Amended Complaint and appellant's Counterclaim in which the trial court found in favor of appellee on his claim for deceptive and unfair trade practices and against appellant on its claim under the Federal Odometer Act. We reverse and remand for a new trial on damages finding that the trial court did not apply the appropriate measure of damages under the Deceptive and Unfair Trade Practices Act. Further, we affirm the trial court's ruling against appellant on its counterclaim under the Federal Odometer Act.
The parties' claims arise from the purchase and sale of a used 1991 BMW 850 from appellant, Fort Lauderdale Lincoln Mercury ("Lauderdale") by appellee, Jerry Corgnati ("Corgnati") and from Corgnati's trade-in of a 1990 Audi as part of the sales transaction.
Corgnati visited Lauderdale's showroom for the purpose of purchasing a used 1991 BMW 850, a limited production vehicle. After approximately a one week period, Corgnati inspected and test drove a used BMW 850. According to Corgnati, Lauderdale's salesman represented that the vehicle had never been in an accident or repainted and was in "showroom condition." Further, upon Corgnati's inquiry, the salesman represented that the car was equipped with a remote infrared opener to unlock the trunk and doors. While Corgnati was permitted to test drive the car, he never requested permission to bring the car to a mechanic for an inspection since the car still had its manufacturer's warranty and was only one year old. Notwithstanding, Corgnati proceeded with negotiations for the purchase of the BMW.
As part of the sales transaction, Corgnati traded in a 1990 Audi and a 1991 Mercedes Benz. Corgnati was given a $10,000 "positive equity credit," which was deducted from the purchase price of the BMW and a trade-in value of $55,000 for the Mercedes Benz and $20,000 for the Audi. Corgnati paid $5,000 and received financing for the balance due.
When Corgnati brought the BMW in for servicing, and complained that the infrared remote was inoperative, he was informed that the car was not equipped with that function. Corgnati informed both the salesman and the used car manager of this fact and was informed that the car was equipped with such a system and that the problem would be rectified. According to Corgnati, the problem was never rectified. Further, *313 after the purchase of the car, it was pointed out to Corgnati that the car had paint drips on two of its wheel and headlight openings. These repairs were corrected by Lauderdale under warranty.
Shortly thereafter, the used car manager contacted Corgnati regarding the odometer reading on the Audi. Upon wholesaling the Audi, it was discovered that there was no warranty and that the correct mileage could not be determined. As Lauderdale claimed this fact affected the trade-in value of the Audi, it wanted an additional $6,000 for the sale of the BMW. As a result, Corgnati stopped payment on the $5,000 check. After making two payments on the BMW, Corgnati, upon the advice of counsel, stopped making payments under the financing agreement. The lending institution that provided financing sued Corgnati, which resulted in the return of the BMW to the institution.
Subsequent thereto, Corgnati brought the BMW to an appraiser of damaged cars and antique automobiles, due to complaints with the car and the recent knowledge that the car had been repainted. Corgnati was informed that the car had been in a severe accident and had been repaired and repainted.
Corgnati filed a complaint against Lauderdale alleging fraudulent misrepresentation and violation of the Florida Deceptive and Unfair Trade Practices Act. Lauderdale filed a counterclaim against Corgnati based upon the trade-in of the Audi as part of the purchase and sale of the BMW. Lauderdale asserted claims for breach of contract, fraudulent misrepresentation, and violation of the Federal Odometer Act, alleging that Corgnati misrepresented the mileage on the Audi trade-in.
At the close of Corgnati's case, Lauderdale moved for directed verdict on the grounds that Corgnati had not established damages for his fraudulent misrepresentation and unfair trade practices counts. The trial court denied this motion as well as Lauderdale's renewed motion at the close of all the evidence. The trial court also denied Corgnati's motion for a directed verdict on Lauderdale's odometer counterclaim.
In its Final Judgment, the trial court, on Corgnati's Amended Complaint, ruled in favor of Lauderdale in count I for fraud and in favor of Corgnati in count II on the Deceptive and Unfair Trade Practices claim. On Lauderdale's counterclaim, the trial court ruled in favor of Corgnati on the fraudulent misrepresentation claim, in favor of Lauderdale on its breach of contract claim and in favor of Corgnati on the Federal Odometer Act claim.
The trial court awarded damages to Corgnati as follows: $2,025.28 (two loan payments made to the lending institution); $17,884.50 for the Mercedes ($64,000 resale by Lauderdale minus $46.115.50 for Corgnati loan payoff); $5,268.59 for the Audi ($20,000 Buyer's Order value minus $14,731.41 for Corgnati loan payoff); and a setoff in favor of Lauderdale in the amount of $3,332.96, for a net judgment of $21,845.41.
The court awarded $2,000 in damages to Lauderdale on its breach of contract claim, thereby reducing the net judgment to $19,845.41. After awarding prejudgment interest in the amount of $7,704.45, the overall final net judgment in favor of Corgnati was $27,549.86.
In its first point on appeal, Lauderdale contends that Corgnati failed to provide the trial court with sufficient evidence to support his claim for damages under Chapter 501, Part II, Florida Statutes. Lauderdale claims that in accordance with the Act, in order for the trial court to enter judgment on the Florida Deceptive and Unfair Trade Practices claim, the trial court needed some evidence to establish the value of the vehicle in the condition in which it was delivered. Specifically, Lauderdale argues there was no evidence presented in accordance with the Act which determined the diminished value of the car in order to determine Corgnati's actual damages.
Florida Deceptive and Unfair Trade Practices Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. § 501.204, Fla. Stat. (1993); see also Urling v. Helms Exterminators, Inc., 468 So.2d 451 (Fla. 1st DCA 1985). Section 501.211(2), Florida Statutes (1993) provides *314 for the following measure of damages when an individual action has been brought as a result of a violation of the Act:
In any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such consumer may recover actual damages, plus attorney's fees and court costs as provided in s.501.2105; however, no damages, fees or costs shall be recoverable under this section against a retailer who has, in good faith, engaged in the dissemination of claims of a manufacturer or wholesales without actual knowledge that it violated this part.
(Emphasis added). In so holding, the Legislature clearly intended as a matter of public policy, to create a simplified statutory cause of action which bestows additional substantive remedies on the citizens of this state to recover economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts. See Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602, 606 (Fla. 2d DCA 1997). The remedies of the Act "are in addition" to other remedies available under state or local law. See id..
In determining the recovery of actual damages under the Act, the Third District in Rollins v. Heller, 454 So.2d 580, 584 (Fla. 3d DCA 1984), review denied, 461 So.2d 114 (Fla.1985) noted that the Act only allows recovery of damages related to the property which was the subject of the consumer transaction. Thus, the measure of "actual damages" recoverable under the statute is defined as follows:
Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [citations omitted] A notable exception to the rule may exist when the product is rendered valueless as a result of the defectthen the purchase price is the appropriate measure of actual damages. [citation omitted]
We hold that Florida's statutes should be interpreted, and actual damages measured, in a similar manner.
Id. at 585 (quoting Raye v. Fred Oakley Motors, Inc., 646 S.W.2d 288, 290 (Tex.App. 1983)); accord Urling, 468 So.2d at 454; see also Maroone Chevrolet, Inc. v. Nordstrom, 587 So.2d 514 (Fla. 4th DCA 1991)(an actual loss must be shown prior to recovery under Chapter 501 and entitlement to nominal damages is not enough).
In this case, Lauderdale argues that the trial court was not provided with evidence as to the "difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." See Rollins, 454 So.2d at 585. Lauderdale maintains that Corgnati argued to the trial court that the "condition in which [the car] should have been delivered" was a used car that had not been in an accident. Corgnati, by way of expert testimony, provided evidence that the 1992 NADA retail value for the BMW, assuming no accident, would be $61,100, plus $300 for the low mileage; the wholesale value that a dealer might expect to pay would be $55,950, plus $300 for the low mileage. The BMW was sold to Corgnati for a purchase price of $65,000. While there was evidence presented that the BMW had been in an accident and had been repainted, Corgnati failed to sustain his burden of demonstrating the market value of the car, a limited production vehicle, in its diminished value, assuming an accident, in order for the trial court to ascertain his actual damages.
"[T]he statute [501.211] entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services." Urling, 468 So.2d at 454. Evidence as to the amount of damages cannot be based on speculation or conjecture, but must be proven with certainty. See George Hunt, Inc. v. Dorsey Young Constr., Inc., 385 So.2d 732 (Fla. 4th DCA 1980).
Corgnati argues that he presented evidence as to the amount received for the *315 trade-ins (Audi and Mercedes), plus out-ofpocket costs which he incurred as a result of the deceptive trade practice committed by Lauderdale. However, it appears that Corgnati is not necessarily seeking recovery for the cost of the damaged car, as set forth under Rollins, but rather, is seeking consequential damages which fall outside the "statutory concept of actual damages." For example, in Urling, 468 So.2d at 454, appellants sought damages for the cost of repairing extensive termite damage to the structure of the house they had purchased after receiving and relying on a false termite inspection certificate. Since they were not seeking recovery of the cost of the erroneous termite certificate, but rather, seeking consequential damages, the court determined that they had no recoverable damages under the Act. Likewise, in Rollins, 454 So.2d at 586, plaintiffs sought to recover the value of items stolen during a burglary because the security system and services Rollins agreed to provide was deficient and did not perform as represented. The court concluded that the actual damages should be computed based upon the alarm system and services to be provided by Rollins, and not with regard to the value of the items stolen during the burglary.
In this case, the trial court awarded to Corgnati the following damages under the deceptive and unfair trade practices claim: two loan payments made to the lending institution prior to Corgnati's cessation of payments on the car and money for the resale value of the Mercedes and the Audi less the amount of Corgnati's loan payoffs. These damages do not constitute "actual damages" as contemplated by the statute. While this award may be the appropriate damage award for fraudulent misrepresentation, the order does not reflect such an intent by the trial court. See Steinbauer Assocs., Inc. v. Smith, 599 So.2d 746, 748 (Fla. 3d DCA), review denied, 606 So.2d 1166 (Fla.1992)(One measure of damages for fraudulent misrepresentation is the pecuniary loss suffered as a result of the recipient's reliance on the misrepresentation.).
In this case, while the trial court found Lauderdale liable on the Deceptive and Unfair Trade Practices and fraudulent misrepresentation claims, it erred in its damages award. It appears that the trial court did not apply the appropriate standard in determining the measure of actual damages suffered under the Deceptive and Unfair Trade Practices claim. There is a question as to whether the evidence produced sufficiently demonstrated the difference in the market value of the BMW in the condition in which it was delivered and the market value in which it should have been delivered in accordance with Rollins. As a result of the foregoing, we reverse and remand for a new trial on damages.
In its second issue on appeal, Lauderdale alleges that the trial court erred in its finding against Lauderdale on Lauderdale's counterclaim under the Federal Odometer Act. We affirm without comment, finding that Lauderdale failed to demonstrate error.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR A NEW TRIAL.
DELL, J., and COLBATH, WALTER N., Jr., Associate Judge, concur.