885 So.2d 1004 (2004)
TURNER GREENBERG ASSOCIATES, INC., Appellant,
v.
Wayne M. PATHMAN, on behalf of himself and all others similarly situated, Appellee.
No. 4D03-2957.
District Court of Appeal of Florida, Fourth District.
November 3, 2004.
*1005 Robert Zarco and Robert M. Einhorn of Zarco Einhorn & Salkowski, P.A., Miami, for appellant.
C. Oliver Burt, III, Anne F. Jacobs and Manuel J. Dominguez of Berman DeValerio Pease Tabacco Burt & Pucillo, West Palm Beach, for appellee.
STEVENSON, J.
Appellee Wayne M. Pathman filed a would-be class action against Turner Greenberg Associates, Inc. (hereinafter "TGA"), a high-end furniture retailer, alleging that the company was making undisclosed profits on shipping charges in violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). TGA appeals the order of the trial court granting Pathman's motion for class certification, challenging virtually every aspect of the ruling. We affirm.

The Lawsuit Initiated by Pathman
In the amended complaint, Pathman made the following allegations: (1) Pathman *1006 hired the interior design firm of Levin, Calderin & Associates (LCA) to assist in the design of his home; (2) LCA ordered a $10,000+ dining room table from TGA for Pathman's home; (3) TGA advised Pathman that the shipping charge for the table would be $400 to $500; (4) when the table was ready to be delivered, TGA revised this figure, informing Pathman that the delivery charge was $985.80  $910.80 in "freight/insurance" charges and a $75.00 "residential charge"; (5) when Pathman asked for an explanation regarding the increase, he was told that the amount represented the cost to ship the table and that TGA was simply passing through the charge; and (6) Pathman ultimately learned that there was a profit component for TGA coming from the "freight/insurance" charge. Pathman claimed that TGA's practice of failing to disclose that the "freight/insurance" charge did not represent actual shipping and insurance costs, but also included a profit component, was a deceptive and unfair trade practice.[1]
Pathman sought to bring a FDUTPA claim not only on behalf of himself, but also on behalf of "[a]ll purchasers of furniture from [TGA] within the State of Florida whose furniture was shipped to them and who was charged a freight/delivery charge by [TGA]" within the four years preceding the filing of suit. Pathman, an attorney, sought to be named class representative. At the time of the filing of the original and amended complaints, Pathman was represented by the law firm of Pathman Lewis, LLP  a firm in which he is a partner.

Pathman's Motion for Class Certification
In March of 2003, approximately two years after suit was filed, Pathman first filed a motion for class certification. By this time, through discovery, Pathman had learned that, unless the buyer made his own shipping arrangements, TGA's business practice or custom was to utilize Horizon Freight Services, Inc. (HFS) to secure and oversee the shipping. HFS did not actually do the shipping, but acted as a broker of sorts. HFS operates out of the same building as TGA and its principals and those of TGA are identical  Steven Turner and Janet Greenberg. In his deposition, Turner acknowledged that TGA did not disclose that either it or HFS made a profit on the shipping and that he is the one who decides, on behalf of HFS, how much to mark-up the freight costs. Records reflected that HFS's mark-up varied, sometimes reaching as much as eighty-six percent.
Relying upon these facts, Pathman took the position that all of Florida Rule of Civil Procedure 1.220(a)'s requirements for class certification  numerosity, commonality, typicality, and adequate representation  had been satisfied. Specifically, Pathman claimed that (1) the number of class members exceeded 500; (2) common questions of law and fact predominated, including whether a reasonable consumer would interpret the term "freight/insurance" to reflect actual shipping costs  not cost plus a margin of profit  and whether TGA's practice of representing the "freight/insurance" charge as a pass-through, when, in fact, TGA is making a profit, offends public policy or is unethical; (3) his claim was *1007 typical of that of the other class members; and (4) he was an adequate class representative.
TGA, on the other hand, insisted that none of the predicates for class certification had been met. With regard to numerosity and typicality, respectively, TGA argued that Pathman had failed to identify a single other person who claimed to have been misled by TGA's practices or to have overpaid and that since Pathman acknowledged that he learned of the profit component prior to paying for the delivery, he was subject to unique defenses. TGA further contended that the fact that Pathman's law firm had served as class counsel for a time gave rise to a conflict of interest that precluded him from being an adequate class representative.
A hearing was held on Pathman's motion on June 9, 2003. Although no testimony was taken, both parties attached affidavits, depositions, and other documentation to their respective motions. On the basis of such evidence, the trial court found that the requirements of rule 1.220(a) and (b)(3) had been satisfied, granting the motion for class certification. On appeal, the trial court's ruling is reviewed for an abuse of discretion. See Execu-Tech Bus. Sys., Inc. v. Appleton Papers, Inc., 743 So.2d 19, 20 (Fla. 4th DCA 1999).

Florida Rule of Civil Procedure 1.220
A class action is sustainable only if the requirements of subsections (a) and (b) of Florida Rule of Civil Procedure 1.220 are satisfied. Subsection (a) requires that, before certifying a class, the trial court must first conclude that all of the following conditions exist:
(1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class.
Fla. R. Civ. P. 1.220(a).
Subsection (b) further requires that one of three prescribed circumstances be present. Here, certification was predicated upon subsection (b)(3), which requires that
[T]he questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy.
We now briefly address several of these requirements in the context of the instant case.

Numerosity
The demonstration of actual loss is a predicate to recovery under FDUTPA. See § 501.211(2), Fla. Stat. (2003) (authorizing recovery of "actual damages"); Maroone Chevrolet, Inc. v. Nordstrom, 587 So.2d 514, 518-19 (Fla. 4th DCA 1991). Thus, in order for a TGA customer to be a member of the class, he or she must have been damaged. TGA contends that a customer was damaged and, thus a potential class member, only if he or she establishes "that the freight charged by Horizon was more than if the customer attempted to obtain similar services from another freight broker." According to TGA, since Pathman failed to present evidence that any of TGA's customers would have paid less by using another freight broker, he failed to satisfy the numerosity requirement. *1008 Pathman, though, asserts that the measure of damages is simply the difference between what TGA charged its customers and the actual cost of the shipping and insurance, a figure that is easily ascertainable from TGA's and HFS's records. The findings in the order granting class certification suggest that the trial court sided with Pathman on this issue. We find no error.
Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati, 715 So.2d 311 (Fla. 4th DCA 1998), while not directly on point, supports Pathman's damages theory. There, following the purchase of a 1991 BMW, Corgnati discovered that, contrary to the representations of the salesperson, the car had previously been involved in an accident. Corgnati then brought a FDUTPA claim predicated upon the salesperson's alleged misrepresentation. The trial court found in favor of Corgnati on the FDUTPA claim, awarding as damages the amount of two loan payments that Corgnati had made on the car and the values of the cars that Corgnati had traded-in when buying the BMW. This court reversed the damages award, agreeing with the defendant's assertion that the correct measure of damages was the difference between the value of a BMW that had not been in an accident  as represented  and the value of the previously wrecked BMW purchased by Corgnati.
In Corgnati, the unfair and deceptive trade practice was the failure to disclose the car's true condition; thus, the measure of damages was the difference between the represented condition and the true condition. Similarly, here, the alleged unfair or deceptive trade practice was TGA's failure to disclose that the "freight/insurance" charge included an element of profit; thus, an appropriate measure of damages is the undisclosed profit, i.e., the difference between the actual costs implied by the term "freight/insurance" and the marked-up amount charged to the TGA customer. With this difference being the measure of damages, the ledgers, composite exhibit, and affidavits offered in support of class certification provided adequate evidentiary support for the trial court's finding of numerosity. Cf. Rollins, Inc. v. Heller, 454 So.2d 580 (Fla. 3d DCA 1984) (finding that FDUTPA claim against parent company was not precluded by the fact that the contract for service was with a subsidiary as the parent company was a direct participant in the dealings with the consumers).

Adequate Representation
Rule 1.220(a)'s requirement of adequate representation looks to whether "`the named representatives have interests in common with the proposed class members and the representatives and their qualified attorneys will properly prosecute the class action.'" Colonial Penn Ins. Co. v. Magnetic Imaging Sys. I, Ltd., 694 So.2d 852, 854 (Fla. 3d DCA 1997) (quoting Broin v. Philip Morris Cos., 641 So.2d 888, 892 (Fla. 3d DCA 1994)). One of the fundamental components of a class representative's ability to adequately represent the class is that they not have a significant conflict of interest with the other class members. See, e.g., Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189 (11th Cir.2003); Terry L. Braun, P.A. v. Campbell, 827 So.2d 261, 268 (Fla. 5th DCA 2002), review denied, 845 So.2d 888 (Fla.2003). For this reason, the courts have been especially cautious when the class representative is an attorney who has professional ties to class counsel. See, e.g., Susman v. Lincoln Am. Corp., 561 F.2d 86 (7th Cir.1977); Shroder v. Suburban Coastal Corp., 729 F.2d 1371 (11th Cir.1984).
As already mentioned, when Pathman initially filed this would-be class action, *1009 he hired his own law firm as counsel. Pathman's firm then represented him during the approximately two years of litigation that preceded the filing of the motion for class certification. While Pathman ultimately obtained new counsel, TGA asserts that the bill for Pathman's firm's services exceeds $200,000 and that Pathman's stake, as a partner, in these legal fees precludes a finding that he is an adequate class representative. We agree that Pathman's status as a shareholder in a firm that is owed more than $200,000 in fees could create a conflict of interest. During oral argument in this case, Pathman expressly waived the right to any fees for legal work previously performed by himself and Pathman Lewis, LLP. We find that such waiver cures any potential conflict of interest.
TGA also suggests that Pathman is an inadequate class representative because he lacks credibility and is allegedly using the class action as a form of legal blackmail. We reject both of these claims without further discussion.

Predominance & Superiority
TGA takes the position that neither the predominance nor the superiority requirements can be satisfied here as resolution of the issues will require the court to make individualized inquiries regarding (1) whether TGA affirmatively represented that the "freight/insurance" charge was simply a pass-through charge; (2) whether the customer relied upon that representation by TGA; and (3) the amount that another freight broker would have charged for the cost of shipping and its services. First, as mentioned in footnote 1, Pathman has pursued his FDUTPA claim on a failure to disclose theory. Second, a demonstration of reliance by an individual consumer is not necessary in the context of FDUTPA.
The decision in Latman v. Costa Cruise Lines, N.V., 758 So.2d 699 (Fla. 3d DCA 2000), review denied, 819 So.2d 136 (Fla.), cert. denied, 537 U.S. 884, 123 S.Ct. 117, 154 L.Ed.2d 143 (2002), is illustrative of this latter point. There, the named plaintiffs sought to bring a class action suit on behalf of cruise line passengers, essentially alleging that the cruise lines were hiding profit in the "port charges." While the term "port charges" was not defined, the plaintiffs asserted that the term implied that the charge represented amounts that were actually paid over to port authorities. According to the plaintiffs, though, the cruise lines were paying over only a portion of the "port charge" and pocketing the rest  a practice that they alleged was deceptive and unfair. The cruise lines opposed certification of the class, arguing that because the passengers were given the total price for the cruise, "absent some indication that the consumers were influenced in some way by the port charges, there is neither reliance nor resulting damage under FDUTPA." 758 So.2d at 702-03. The trial court accepted this argument and denied class certification. The Third District, however, reversed, finding that "[r]eliance and damages are sufficiently shown by the fact that the passenger parted with money for what should have been a `pass-through' port charge, but the cruise line kept the money." Id. at 703. The same can be said for the "freight/delivery charge" in the instant case.

Conclusion
We have considered the other arguments raised on appeal, including those concerning "typicality" and "commonality," but find no error. Accordingly, the order on appeal is AFFIRMED.
STONE and HAZOURI, JJ., concur.
NOTES
[1] At some points, the amended complaint appears to be complaining of TGA's failure to disclose the profit component and at others of TGA's "advis[ing] consumers that the freight charges it charged for the delivery of merchandise were a direct pass through of Turner's actual costs." Based on the arguments advanced below and in the briefs, Pathman appears to be proceeding on the failure to disclose theory.