468 So.2d 451 (1985)
Randolph S. URLING and Deborah E. Urling, Appellants,
v.
HELMS EXTERMINATORS, INC., Appellee.
No. AX-117.
District Court of Appeal of Florida, First District.
May 7, 1985.
*452 Terry P. Lewis of Oven, Gwynn & Lewis, Tallahassee, for appellants.
Paula L. Walborsky of Booth & Walborsky, P.A., Tallahassee, for appellee.

ON MOTION FOR REHEARING
PER CURIAM.
Appellee has filed a lengthy motion for rehearing and motion for rehearing en banc, including a suggestion for certification to the Florida Supreme Court. Appellants have filed a lengthy response contending the motions should be denied but urging clarification of the court's original opinion. Upon consideration of their respective contentions, we have determined to withdraw our original opinion and substitute the following corrected opinion. To the extent that matters raised in the motions for rehearing are not disposed of in the corrected opinion, those motions are denied.

CORRECTED OPINION
Appellants, Randolph and Deborah Urling, obtained a judgment awarding them money damages based on a jury verdict finding appellee, Helms Exterminators, Inc., guilty of negligence in issuing a termite inspection report certifying no termite damage to a house purchased by them when no inspection was made. Being unsatisfied with the amount of damages obtained, they contend on appeal that the trial court erred in directing a verdict for Helms on their claim that Helms violated the Florida Deceptive and Unfair Trade Practices Act, chapter 501, part II, Florida Statutes (1981), erred in directing a verdict for Helms on their claim for punitive damages, and erred in making several rulings on evidentiary matters. We affirm in part and reverse in part.
Helms, the corporate defendant, certified that its inspector had inspected the house to be purchased by the Urlings and found no existing termite damage. Later, however, the Urlings found extensive termite damage. Baker, the Helms inspector whose name appeared on the inspection report, denied that he made the inspection and denied that he authorized anyone to sign his name to the report. A secretary employed by Helms established that it was a customary practice for Baker to call in his inspection reports to her and that she *453 would type them and often sign Baker's name on them, but only after he had reviewed them. She did not recall ever signing his name to a report he had not reviewed.
Sections 501.201 through 501.213, Florida Statutes (1981), constitute the Florida Deceptive and Unfair Trade Practices Act. Section 501.204 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." An exact definition of the "unfair or deceptive acts or practices" is provided nowhere in the statute. Section 501.204(2), however, states that "[i]t is the intent of the Legislature that in construing subsection (1) of this section, due consideration and great weight shall be given to the interpretations of the ... federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. § 45(a)(1))." That provision reads: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."
There are only two Florida cases construing "unfair or deceptive acts or practices," but the factual contexts of those cases are so limited that they are not helpful in arriving at a general definition. See Deltona Corp. v. Jannotti, 392 So.2d 976 (Fla. 1st DCA 1981), and Bert Smith Oldsmobile v. Franklin, 400 So.2d 1235 (Fla. 2d DCA 1981). The Urlings cite a number of federal cases that also give specific instances of such practices, but neither are these cases helpful.
Although the cases, both state and federal, seem to have most often classified exaggerated advertising claims as "unfair and deceptive" in violation of the act, the language of the statute does not limit its application to these types of cases, but makes it applicable to all "unfair or deceptive acts or practices in the conduct of any trade." § 501.204(1), Fla. Stat. (1981) (emphasis supplied). In Spiegel, Inc. v. Federal Trade Comm., 540 F.2d 287, 293 (7th Cir.1976) (footnote omitted), the court found that a practice was "unfair" under the federal statute when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."
In this case the trial court evidently based its directed verdict on the absence of fraud and deceit in Helms' conduct. A finding of fraud, however, is not necessary to sustain a violation under the act. Rollins, Inc. v. Heller, 454 So.2d 580 (Fla. 3d DCA 1984). As the Rollins court pointed out, the legislature has specifically provided that great weight is to be given the federal courts' interpretations of the Federal Trade Commission Act. § 501.204(2), Fla. Stat. (1981). In D.D.D. Corp. v. Federal Trade Comm., 125 F.2d 679, 682 (7th Cir.1942), the court held that the "false, unfair or deceptive acts defined in the Federal Trade Commission Act need not be such as would constitute fraud." Bearing these legal concepts in mind, we next consider whether the evidence was sufficient to survive a motion for directed verdict.
The standard for directing a verdict is stated in Townsend v. Ward, 429 So.2d 404, 407 (Fla. 1st DCA 1983): (1) "[T]he court ... must view the evidence in the light most favorable to the non-moving party," and (2) "If there is any evidence to support a possible verdict for the non-moving party, a directed verdict is improper." Viewing the evidence in the light most favorable to the Urlings shows that it was a standard practice for termite inspection reports to be phoned in and typed by the secretary and for the secretary to place the inspector's signature on the report. The secretary would not have performed either act without instructions from the inspector. The inspector acknowledged that the inspection certified by the report never took place. This evidence is sufficient to support an inference that the inspector, to avoid making an inspection, phoned in a false report and instructed the secretary to sign his name thereto and that this report was subsequently delivered to and relied on by the Urlings to their detriment. While *454 the inspector denies any knowledge of the report, as does Helms, the accumulation of the other evidence creates a jury question as to the nature of the act under chapter 501. Applying the cited standards for directing a verdict, we reverse the directed verdict for Helms on this issue and, as a result, must also reverse the attorney's fees and costs awarded Helms under the act.
Although the damages sought by the Urlings under the act were not challenged by Helms at the pleading, trial, or appellate level, we would be remiss if we did not discuss this issue because of the necessity to remand this case. The act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer. Section 501.211, Florida Statutes (1981), authorizes a consumer to recover actual damages, attorney's fees, and court costs for a violation of the statute. The measure of "actual damages" recoverable under the statute is defined in Rollins, Inc. v. Heller, 454 So.2d at 585, quoting from Raye v. Fred Oakley Motors, Inc., 646 S.W.2d 288, 290 (Tex. App. 1983), as follows:
`Generally, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. [citations omitted] A notable exception to the rule may exist when the product is rendered valueless as a result of the defect  then the purchase price is the appropriate measure of actual damages. [citations omitted]'
In the Rollins case, the plaintiffs sought to recover the value of items stolen during a burglary because the security system and services provided by Rollins were deficient and did not properly perform as represented. The court concluded that "[t]he actual damages in the present case should be computed based upon the alarm system and the services Rollins agreed to provide, and not with regard to the value of the items stolen during the burglary." Id. at 586. It seems, therefore, that the statute entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services.
The Urlings seek to recover as damages the cost of repairing extensive termite damage to the structure of the house they purchased after receiving and relying on the false termite inspection certificate issued by Helms. The cost of these repairs constitutes special or consequential damages which fall outside the statutory concept of actual damages as defined in section 501.211, Florida Statutes (1981), and Rollins. Since the Urlings are not seeking recovery of the cost of the erroneous termite certificate but, rather, seek consequential damages, they have no recoverable damages under the act. We assume this issue will be resolved upon remand.
The standard for imposition of punitive damages in negligence cases is characterized in White Construction Co., Inc. v. Dupont, 455 So.2d 1026, 1029 (Fla. 1984), quoting from Carraway v. Revell, 116 So.2d 16, 20, n. 12 (Fla. 1959), as follows:
`The character of negligence necessary to sustain an award of punitive damages must be of a `gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.'
In Doral Country Club, Inc. v. Lindgren Plumbing Co., 175 So.2d 570, 571 (Fla. 3d DCA 1965), the court stated: "If there is any evidence tending to show that punitive damages could be properly inflicted, even if *455 the court be of the opinion that the preponderance of the evidence is the other way, the court should leave the question to the jury." The Florida Supreme Court, in Wackenhut Corp. v. Canty, 359 So.2d 430, 435 (Fla. 1978), saw the trial court's task as the determination of "whether there is a legal basis for recovery of punitive damages shown by any interpretation of the evidence favorable to the plaintiff."
We conclude that the trial court did not err in withdrawing the issue of punitive damages from the jury. The evidence, taken most favorably to plaintiffs, did not establish a proper foundation for awarding punitive damages against the corporate defendant, Helms, regarding its release of the false inspection report. The testimony and other evidence in the record did not reveal any other instance of false certification, nor did it establish any pattern or course of conduct by Helms Exterminators, Inc., and its employees indicating falsification of certificates for inspections not actually performed. The evidence established only that, in this single instance, a Helms report falsely certified that a termite inspection had been recently made when in fact the house had not been inspected for termites in approximately a year.
We would agree with reversal of the directed verdict if the claim for punitive damages were predicated against the employee, Baker (Baker was sued but dismissed as a party before trial). The law is clear that "[w]hether a fraudulent act is `sufficiently outrageous so as to justify an award of punitive damages is a question for the jury.'" Walsh v. Alfidi, 448 So.2d 1084, 1087 (Fla. 1st DCA 1984) (quoting from Schief v. Live Supply, Inc., 431 So.2d 602, 603 (Fla. 4th DCA 1983)). The present action, however, is not against the employee, but against the corporate employer. Before an employer may be held vicariously liable for punitive damages under the doctrine of respondent superior, it is essential for a plaintiff to establish that there was some fault on the employer's part "which foreseeably contributed to the plaintiff's injury to make him [the employer] vicariously liable for punitive damages." Mercury Motors Express, Inc. v. Smith, 393 So.2d 545, 549 (Fla. 1981) (emphasis supplied). Thus, under Mercury Motors, it is not enough for there to be fault on behalf of the employer, independent from that of the employee; the employer's fault must somehow have foreseeably contributed to the plaintiff's injury. The only theory of fault advanced by appellants against Helms was that Helms was negligent because the secretary was not properly instructed regarding the filling out of termite inspection reports, there was no orientation program for her, and nobody had explained the purpose of the forms to her.
Accepting the evidence in the light most favorable to the Urlings, the nonmoving parties against whom the directed verdict was entered, it is obvious that any purported negligence of Helms in failing to supervise his secretary could not have foreseeably contributed to the Urlings' injury absent some evidence of knowledge by Helms of the inspector's fraudulent conduct. On the present record, the deliberate false representations of Baker, the inspector, if they existed, would have appeared on the inspection report regardless of Helms' endeavor to supervise his secretary in the proper preparation of reports submitted by his inspectors. There is no showing by this isolated incident of misrepresentation that the employer had either actual or constructive knowledge of Baker's fraud. There is nothing in the record revealing a pattern or course of conduct by Helms' employees that should have placed the employer on notice that they were intentionally falsifying certificates of inspections which they had not actually performed. For purposes of proving entitlement to punitive damages, there is insufficient evidence that the employer knew or should have known that its agents were engaging in a course of fraudulent conduct likely to harm the plaintiffs. Life Insurance Co. of North America v. Del Aguila, 417 So.2d 651 (Fla. 1982). Accordingly, *456 the directed verdict on punitive damages is affirmed.
We agree with the Urlings' contention that admission of the testimony of the chief real estate appraisal analyst of the tax appraiser's office was error and prejudicially affected the outcome of their negligence case. The information relied on by the analyst regarding the size, shape, and construction of the house varied so materially from the actual facts that it was, in our opinion, an incompetent predicate for the analyst's opinion as to the value of the house. We therefore reverse on this issue and remand the negligence action for a new trial on the issues of liability and compensatory damages. Although the pretrial order recognized that plaintiffs would proceed against Helms on a theory of simple negligence, the record reflects that neither a complaint nor an answer addressing this cause of action was filed by the parties. We suggest that this be done before the new trial.
While we remand the unfair and deceptive trade practices action and vacate the attorney's fee and costs awarded to Helms' attorney as previously discussed, recoverable damages have not been claimed by appellants and we suggest that this issue be resolved before trial.
AFFIRMED in part, REVERSED in part, and REMANDED.
ERVIN, C.J., and MILLS and ZEHMER, JJ., concur.