# ROPER, et al. v METROPOLITAN MORTGAGE COMPANY, INC.

## Case No. 86-12890 CA 24

Eleventh Judicial Circuit, Dade County

May 20, 1988

## APPEARANCES OF COUNSEL

**Carolina A. Lombardi,** Legal Services of Greater Miami, Inc., for plaintiffs.

**Charles M. Baird** for plaintiffs.

**Peter H. Barber** for plaintiffs.

**Gregg Spieler** for defendant.

## OPINION OF THE COURT

EDWARD S. KLEIN, Circuit Judge.

### *FINAL JUDGMENT*

THIS ACTION was tried before the Court on December 22, 1987. On the evidence presented the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. This action was brought by customers of the Defendant, Metropolitan Mortgage Company. They seek relief which includes voiding mortgages presently held by Defendant, Metropolitan Mortgage Company, on their respective homes. The legal description of the McClendon home is:

Lot No. 5, Block No. 3 of McCall Park, according to the Plat thereof, as recorded in Plat Book 21 at Page 20 of the Public Records of Dade County, Florida

1431 N. W. 55th Terrace

Miami, Florida 33102

The legal description of the Davis property is:

Lot No. 7, Block No. 8 of Seventeenth Avenue Manor, according to the Plat thereof, as recorded in Plat Book 18 at Page 43 of the Public Records of Dade County, Florida

1852 N. W. 47th Street

Miami, Florida 33142

Of the original Plaintiffs two remain, Minnie McClendon and Marie Davis. Of the original counts of the complaint two were tried: Count IX which alleges a violation of the Florida Deceptive and Unfair Trade Practices Act and Count XII which requests a Declaratory Judgment that the Loan Employment Agreement which purports to authorize the challenged practice is unconscionable.

2. Each plaintiff applied to Metropolitan Mortgage Company for a home equity loan. Each was later advised by Metropolitan that the loan had been disapproved. Each further learned that, despite approval of the loan, Metropolitan had recorded a mortgage for its full amount and would not produce a satisfaction of mortgage without payment of a broker's fee and other charges pursuant to the provisions of the Loan Employment Agreements signed by the plaintiff.

3. Neither plaintiff can read very well, nor could Plaintiff, McClendon's deceased husband. On recent reading tests plaintiffs scored in the bottom 1st to 3rd percentiles for adults. Both plaintiffs are deficient in formal education and lack any expertise in financial affairs.

4. At the time that plaintiffs applied for their loans from Defendant, Metropolitan required them to execute a Loan Employment Agreement, a mortgage note for the full amount of the loan applied for, a mortgage securing the note, and a statement detailing the terms of the loan, including estimated amounts for brokerage fees and payments to

92

Spieler & Spieler, P.A. for a title search and title examination. Plaintiffs received copies of all of these documents and a recission notice advising them that they had three business days after the execution of these documents to cancel the transaction without obligation.

5. Metropolitan recorded the mortgages before performing the title search and title examination regarding the respective properties.

6. This Court finds that neither plaintiff was orally informed by representatives of defendant that defendant would record the mortgage against her home in an attempt to collect a full brokerage fee and other fees even if the loan was not approved. The Court further finds that neither plaintiff was actually aware that such would take place.

7. Expert testimony was presented by the plaintiffs to the effect that the Loan Employment Agreement is confusing, incomprehensible and, in effect, deceptive concerning the term which purports to authorize Metropolitan to record the mortgage as security for the payment of brokerage fees and costs in the event the loan is not funded. The Court is not convinced that the language of the agreement is any more confusing than the typical insurance policy or Internal Revenue Service regulation. However, it is clear that plaintiffs did not understand all of the terms of the agreement and this particular provision was not explained to them.

8. Metropolitan does not attempt to broker loans until after a loan has been funded and disbursed to the borrower. These loans were not funded and disbursed. Therefore, Metropolitan did nothing to broker the loans.

9. Metropolitan failed to comply with Rule 3D-40.008(1), Florida Administrative Code, which requires that costs be itemized and support by an actual expenditure.

10. Each plaintiff received a letter from attorney Stanley H. Spieler informing her that the loan would not close because of undisclosed liens on the respective homes. In the same letter each plaintiff was informed that if certain fees and costs were not paid, the recorded mortgages, each for the full amount applied for, would remain unsatisfied and upon the public record. Metropolitan demanded a total amount of $968.07 from Davis and $1,253.91 from McClendon.

## CONCLUSIONS OF LAW

### A.

1. Part II of Chapter 501, Florida Statutes is the Florida Deceptive and Unfair Trade Practices Act (UDAP). The substance of the Act is

contained in Section 501.204(1), which reads in full: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

2. The Florida Legislature has explicitly called for an expansive, liberal interpretation of the Florida UDAP. Section 501.202, Florida Statutes states in full:

The provisions of this part shall be construed liberally to promote the following policies:

(1) To simplify, clarify, and modernize the law concerning consumer sales practices.

(2) To protect consumers from supplies who commit deceptive and unfair trade practices.

(3) To make state regulation of consumer sales practices consistent with the established policies of federal law relating to consumer protection.

3. As in many other states, the Florida Legislature, did not attempt to define "deceptive acts or practices." In *State ex rel. Danforth v. Independence Dodge, Inc.,* 494 S.W.2d 362, 368 (Mo. Ct. App. 1973) the Court states:

"In order to give broad scope to the statutory protection and to prevent ease of evasion because of overly meticulous definitions, many of these laws . . . 'do not attempt to define deceptive practices or fraud, but merely declare unfair or deceptive acts or practices unlawful . . .' Commerce Clearing House, Poverty Law Rep. Vol. 1, 3200, leaving it to the court in each particular instance to declare whether fair dealing has been violated."

## B.

4. This Court concludes that Metropolitan's practice, as described above, of recording a mortgage for the full amount of the loan that a consumer applies for, plus the maximum brokerage commission allowed by law, plus other fees (including attorneys fees), even though the loan is never funded by Metropolitan and even though the consumer never receives any of the proceeds of the loan, is deceptive within the meaning of 501.204(1), Florida Statutes.

## C.

5. The standard in Florida for trial courts to apply to determine unfairness under the Florida UDAP holds that a practice is unfair when it "offends established public policy and when the practice is

94

immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Urling v. Holmes Exterminators, Inc.,* 468 So.2d 451, 453 (Fla. 1st DCA 1985).

6. Although Metropolitan's practice may not be characterized in as harsh terms as "immoral, unethical or unscrupulous," this Court finds it to be "oppressive" and "substantially injurious to consumers" and, therefore, unfair under the Florida Deceptive and Unfair Trade Practices Act.

7. Florida courts recognize a cause of action to remedy unconscionable business conduct. See e.g., *Kohl v. Bay Colony Club Condominium, Inc.,* 398 So.2d 865, 868 (Fla. 4th DCA) *pet. for review denied,* 408 So.2d 1094 (Fla. 1981). The Third District Court of Appeal has stated that "where it is perfectly plain to the Court that one party [to a contract] has overreached the other and has gained an undeserved advantage which it would be inequitable to permit him to enforce, then a Court of equity will not hesitate to interfere, even though the victimized parties owe their predicament largely to their own stupidity and carelessness." *Steinhardt v. Rudolf,* 422 So.2d 884, 889 (Fla. 3d DCA 1982).

8. To find unconscionability Courts require a certain quantum of procedural plus a certain quantum of substantive unconscionability. *Id.*

9. Procedural unconscionability looks to the circumstances surrounding the making of the contract, including a focus on the relative abilities of the parties. Some of the factors that are considered include: Age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods [or services] in question. *Kohl,* 398 So.2d at 868. Under these criteria this Court concludes that the transactions in question were procedurally unconscionable.

10. Substantive unconscionability examines the unfairness of the contract. "The 'substantive' heading embraces the contractual terms themselves, and requires a determination of whether they are commercially reasonable." *Kohl,* 398 So.2d at 868. This Court concludes that the contractual terms in the present case are not commercially reasonable and are therefore substantively unconscionable.

### E.

11. In sum, this Court concludes that, as applied to these plaintiffs, the practice of Metropolitan of taking loan applications, mortgages and

notes from loan applicants, and then recording the mortgage in the full amount of the loan applied for, and thereafter disapproving such loans but nonetheless, and thereafter disapproving such loans but nonetheless refusing to satisfy the mortgage without payment of a broker's fee and other charges is unfair, is deceptive, and is unconscionable.

12. This Court will provide a remedy that restores plaintiffs to the status quo prior to their transactions with the defendant.

For the foregoing reasons, it is ORDERED AND ADJUDGED as follows:

1. The practices described hereinabove are hereby DECLARED to be violative of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Part II, Florida Statutes, and are also DECLARED to be unconscionable.

2. The loan employment agreement, the note for $7,525.00 and the mortgage for the same amount executed by Plaintiff, Minnie McClendon and her husband, Theodore McClendon, on August 14, 1985 are hereby DECLARED to be null and void and unenforceable.

3. The Loan Employment Agreement, the note for $5,450.00 and the mortgage for the same amount executed by Marie Davis on December 19, 1985 are hereby DECLARED to be null and void and uneforceable.

4. This Court hereby reserves jurisdiction to entertain a motion for attorney's fees and costs by plaintiffs.

DONE AND ORDERED in Chambers, at Miami, Dade County, Florida, on this 20th day of May, 1988.