DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MAROONE CHEVROLET, LLC** d/b/a **MAROONE CHEVROLET,**
Appellant,

v.

**GERMAN ALVARADO,**
Appellee.

No. 4D21-485

[July 6, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. CACE04-001947 (18).

Nancy W. Gregoire Stamper of Birnbaum, Lippman & Gregoire, PLLC, Fort Lauderdale, and Richard A. Ivers of Law Office of Richard A. Ivers, Coconut Creek, for appellant.

Robert F. Cooke and Arianna M. Mendez of Cooke Carbonell, LLP, Cutler Bay, for appellee.

PER CURIAM.

Appellant Maroone Chevrolet, Inc., LLC ("Maroone"), appeals the trial court's final judgment awarding appellee German Alvarado $36,406.67 in damages related to his purchase of two vehicles ("First Truck" and "Second Truck"). Alvarado brought his claims in four separate but related counts:

1) violation of the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA") section 501.201 pertaining to both trucks;
2) violation FDUTPA section 501.976 on the Second Truck;
3) violation of the Florida Motor Vehicle Retail Sales Finance Act section 520.08 on the First Truck and violation of section 520.07 on the Second Truck; and
4) fraud in the inducement.

Maroone appeals the damages awarded on Counts 2, 3, and 4, but it does not appeal Count 1.[1]  For the reasons stated below, we reverse the damages awarded on Counts 2 and 3.  We affirm on Count 4.

Maroone purchased what was purported to be a used 2000-model Chevrolet 3500 pickup truck ("First Truck") from Ideal Auto Brokers.  Ideal Auto gave Maroone a State of Florida Certificate of Title showing the vehicle identification number ("VIN") matched the number on the First Truck's dashboard.  Maroone performed an inspection, serviced the vehicle, and then re-sold the First Truck to Alvarado.  Alvarado paid $12,000.00 down and signed a Retail Installment Sales Contract ("RISC"), financing $22,768.79 at a rate of 15.75% for five years with monthly payments of $554.23 and a finance charge of $10,485.01.

Alvarado drove the First Truck for approximately eleven months until, while performing service on the vehicle, Maroone discovered the VIN associated with the truck's warranty did not match the registration number on the driver's door.  This discrepancy was never discovered by Ideal Auto, Maroone, or any of the other servicers who had previously worked on the vehicle while Alvarado owned it.  Maroone reported the truck to the police, who confirmed it to be a stolen 1998-model before confiscating the vehicle.

Maroone provided Alvarado with a loaner vehicle and successfully worked with the lender to cancel Alvarado's loan. Maroone then endeavored to obtain a replacement for the First Truck.  When Maroone found a similar vehicle, Maroone replaced the radio and refurbished the interior at Alvarado's request.  Alvarado accepted the vehicle and signed a RISC for its purchase ("Second Truck").[2]

Maroone purportedly applied Alvarado's $12,000.00 deposit paid on the First Truck against the cost of the Second Truck, which Alvarado purchased for a net price of $16,648.91 with a shorter repayment period and smaller monthly payments.  Within a few months, Alvarado traded in the Second Truck towards the purchase of another vehicle at another dealership.

---

[1] The jury found Maroone did not violate section 501.201 on the First Truck and, therefore, awarded no damages on the First Truck under Count 1.  The jury awarded damages for the Second Truck under section 501.976 for Alvarado's claim in Count 2 but awarded no damages related to the Second Truck from Alvarado's claim under section 501.201 in Count 1.

[2] Alvarado claimed that he asked for Maroone to return his $12,000.00 down payment and other payments on the First Truck.

Alvarado sued Maroone in late 2003, amending his complaint twice. The third amended complaint alleged four counts for violations of FDUTPA on both trucks, a violation of sections 520.08 and 520.07 on the First and Second Truck, respectively, and fraud in the inducement.

The jury returned a verdict, finding Maroone:

(1) did not violate section 501.201 on the First Truck but had violated section 501.976 on the Second Truck, awarding Alvarado $6,768.76;

(2) willfully violated section 520.08 by charging above the finance charge limit on the First Truck, awarding Alvarado $1,858.85;

(3) willfully violated section 520.07 by failing to provide an itemization of the finance charges on the Second Truck, awarding Alvarado $297.17; and

(4) did not fraudulently induce Alvarado to purchase the First Truck but did fraudulently induce him to buy the Second Truck, awarding Alvarado $7,000.00.

Those damages totaled $15,924.78. With prejudgment interest added, the trial court set the final judgment award at $31,976.43. This appeal followed.

### The Section 501.976 Claim

Maroone first argued Alvarado was not entitled to damages for his claim in Count 2 under section 501.976 on the Second Truck because the $6,768.76 awarded by the jury was for "consequential damages" and not "actual damages" recoverable under the statute. We agree.

"While the trial court's findings must be affirmed if supported by competent, substantial evidence, we review de novo the court's application of the law to those facts." *State v. Hinman,* 100 So. 3d 220, 220 n.1 (Fla. 3d DCA 2012) (citing *Jackson v. State,* 18 So. 3d 1016, 1027 (Fla. 2009)). "To bring a FDUTPA claim for damages, a plaintiff must establish three elements: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 212 (Fla. 4th DCA 2019); *Dorestin v. Hollywood Imports, Inc.*, 45 So. 3d 819, 824–25 (Fla. 4th DCA 2010) ("Proof of actual damages is necessary to sustain a FDUTPA claim."). Pursuant to the plain wording of section 501.211(2), Florida Statutes (2000), which provides remedies for FDUTPA violations: "In any action brought by a person who has suffered a loss as

a result of a violation of this part, such person may recover *actual damages*, plus attorney's fees and court costs . . . ." (emphasis added). This is because "[t]he act is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. 1st DCA 1985).

In any action brought by a person who has suffered a loss as a result of a violation of this part, section 501.211 "entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services." *Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati*, 715 So. 2d 311, 314 (Fla. 4th DCA 1998) (quoting *Urling*, 468 So. 2d at 454). Because the statute provides for "actual damages" only, recovery of other damages, such as consequential damages, is unauthorized. *See Corgnati*, 715 So. 2d at 314.

"Competent substantial evidence is evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred . . . . [S]uch relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Sch. Dist. of Indian River Cnty. v. Fla. Pub. Emps. Relations Comm'n*, 64 So. 3d 723, 727 (Fla. 4th DCA 2011) (quoting *J.S. v. Fla. Dep't of Child. & Fams.*, 18 So. 3d 1170, 1175 (Fla. 1st DCA 2009)) (internal quotation marks omitted).

Alvarado argues that the loss of his $12,000.00 down payment, as well as various loan, warranty, and other payments, were part of his actual damages. However, down payments and loan payments typically are not included in actual damages because they are considered consequential damages. *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 181 (Fla. 3d DCA 2010). "[A]n appellate court should reverse a jury verdict when there is no rational basis in the evidence to support the verdict of the jury." *Izquierdo v. Gyroscope, Inc.*, 946 So. 2d 115, 118 (Fla. 4th DCA 2007).

Here, Alvarado requested the return of his down payment and monthly payments. His arguments blurred the lines between properly awardable actual damages and the consequential damages which he requested. In fact, the trial testimony reveals a variety of monetary figures provided to the jury, none of which proved the diminished value of the Second Truck. *See Urling*, 468 So. 2d at 454. There simply was no competent, substantial evidence to support the proper measure of damages, and the jury's ultimate damage awards pertaining to Count 2 must be reversed.

### *The Section 520.07 and Section 520.08 Claims*

As to Count 3, Alvarado claimed a violation of sections 520.07 and 520.08 based on the preparation of the RISC on the Second Truck and the preparation of the first RISC on the First Truck, respectively. Maroone argued that because Alvarado used his own, incorrect calculation—rather than the proper formula used to determine finance charges as found in *Nolden v. Summit Financial Corp.*, 244 So. 3d 322, 327 n.3 (Fla. 4th DCA 2018)—to prove his claims under that statute, Alvarado was not entitled to damages. We agree.

Alvarado's claims under these sections fail for two reasons. First, there was no delinquency. Second, and more importantly, section 520.08 limits finance charges on new and used motor vehicles depending on the age of the vehicle. Subsection (1)(b) limits the maximum finance charge to $11.00 per $100.00 per year on any used vehicle "designated by the manufacturer by a year model of the same or not more than 2 years prior to the year in which the sale is made." Subsection (1)(c) limits the maximum finance charge to $15.00 per $100.00 per year on year-models "not more than 4 years prior to the year in which the sale is made." Because the First Truck was ultimately determined to be a 1998 vehicle, the maximum finance charge under section 520.08(1)(c) was $15.00 per $100.00 per year.

In *Nolden,* we explained the "formula for calculating the finance charge in terms of dollars per $100.00 per year." *Nolden,* 244 So. 3d at 327 n.3. Under that formula, the finance charge divided by the length of the finance period is divided by the amount financed divided by one hundred.[3] *Id.* Alvarado did not use the formula provided in *Nolden* but instead used his own calculation, resulting in a purported finance charge of 27.95% on the First Truck—well over the 11% limit provided by section 520.08(1)(b) or the 15% limit provided by section 520.08(1)(c). The use of the incorrect calculation resulted in a penalty of $1,858.85 on the First Truck. However, when the proper formula from *Nolden* is applied, the resulting finance charge is $9.21 per $100.00 and well within both allowable ranges.[4]

---

[3] The formula for calculating the finance charge in terms of dollars per $100.00 per year is

| Finance Charge | ÷ | Amount Financed | = | Finance Charge |
|---|---|---|---|---|
| Length of time Financed | | $100.00 | | per $100.00 per year |

[4] Alvarado signed an RISC for the First Truck, financing $22,768.79 at a rate of 15.75% for five years with a finance charge of $10,485.01.

Furthermore, applying the undisputed numbers for those values on the Second Truck to the proper formula produces a finance charge of 9.21%, which is also below the 11% statutory limit.

Regarding the Second Truck, Alvarado claimed that Maroone violated section 520.07 by failing to disclose the $12,000.00 discount on the Second Truck on the second RISC when it reduced the cost of the truck by the original $12,000.00 down payment on the First Truck. Alvarado's counsel asked for $297.17. Even if this penalty was wrongly derived from section 520.08, as was done with the First Truck, the wrong formula was used to derive the figure.

Under the penalties section found in section 520.12(2) applicable to violations of section 520.08:

> In the case of a *willful violation* of this part with respect to any retail installment sale, the buyer may recover from the person committing such violation, or may set off or counterclaim in any action against the buyer by such person, *an amount equal to any finance charge and any fees charged to the buyer by reason of delinquency*, plus attorney's fees and costs incurred by the buyer to assert rights under this part.

§ 520.12(2), Fla. Stat. (2014) (emphasis added).

The jury's verdict on Count 3 was based on incorrect calculations and therefore not based on competent, substantial evidence. *See Atkins N. Am., Inc. v. Tallahassee MH Parks, LLC*, 277 So. 3d 1156, 1160 (Fla. 1st DCA 2019). Alvarado's use of the incorrect formula prevents him from receiving any award under section 520.12(2). We reverse the damages awarded under Count 3 and direct the trial court to enter a judgment in Maroone's favor on that count.

### *The Fraud in the Inducement Claim*

In Count 4, Alvarado alleged fraud in Maroone's representations regarding the "stolen pickup truck"—the First Truck—and its refusal to undo the transaction on the First Truck after it was confiscated. Alvarado demanded as damages any difference in the First Truck's value, charges he paid under the "illegal finance agreement," loss of use, the allegedly excessive sales tax, and the "loss of benefit of the bargain." Yet, Maroone

---

$\dfrac{\$10,485.01}{5\ \text{years}}$ ÷ $\dfrac{\$22,758.79}{\$100.00}$ = 9.21% per $100 per year

6

argues that Count 4 contained no mention of the Second Truck or damages incurred as the result of any purported fraud regarding the Second Truck. Alvarado's counsel requested $812.19 in damages for the Second Truck, equaling the two monthly payments Alvarado made.[5]

"Fraud in the inducement presents a special situation where parties to a contract appear to negotiate freely . . . but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1240 (Fla. 1996) (quoting *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 545 (Mich. 1995)). The elements to establish a claim for fraudulent inducement are:

> (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment.

*Prieto v. Smook, Inc.*, 97 So. 3d 916, 917 (Fla. 4th DCA 2012) (quoting *Shakespeare Found., Inc. v. Jackson*, 61 So. 3d 1194, 1199 n.1 (Fla. 1st DCA 2011)). "[T]o prove fraud, a plaintiff must establish that the defendant made a deliberate and knowing misrepresentation designed to cause, and actually causing detrimental reliance by the plaintiff." *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987).

The jury heard from both parties regarding their interactions surrounding the sale of the Second Truck. Although Maroone argues that all of Alvarado's claims revolve around the sale of the First Truck and Maroone's refusal to give Alvarado his money back, that refusal is connected to Maroone's ability to sell Alvarado the Second Truck. The jury was free to decide whether Maroone behaved in such a way that Alvarado was not able to make an informed decision about whether to purchase the Second Truck. *See HTP*, 685 So. 2d at 1240. Because the jury decided that Maroone deliberately made statements to Alvarado regarding the First Truck and the Second Truck, and regarding his ability to get his money back, the jury's decision on the claim is supported by competent, substantial evidence.

---

[5] Throughout the trial proceedings Maroone's counsel objected to any testimony and evidence regarding the Second Truck as an unpled claim, and the trial court agreed to a standing objection.

### Conclusion

Because Alvarado failed to introduce evidence of any diminution in the value of the Second Truck, we reverse the FDUTPA liability and damages awarded in Count 2 and remand for the court to vacate that award. Because Alvarado used the incorrect formula for the violation of sections 520.07 and 520.08 in Count 3, we also reverse the finding of liability and damages on that count. We affirm, however, the finding of liability and damages on Count 4. We remand for such other proceedings as are deemed necessary resulting from this opinion, including any necessary modifications to the court's award of prejudgment interest.

*Affirmed in part, reversed in part, and remanded with instructions.*

KLINGENSMITH, C.J., MAY and KUNTZ, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***